# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2489
_____

| | | |
|---|---|---|
| In re: Apex Oil Company, Inc., | * | |
| | * | |
| Debtor. | * | |
| _____ | * | |
| | * | |
| Apex Oil Company, Inc., | * | |
| | * | Appeal from the United States |
| Debtor/Appellant, | * | District Court for the |
| | * | Eastern District of Missouri. |
| v. | * | |
| | * | |
| Katherine Sparks, Kenneth Klocke, | * | |
| Carolyn F. Klocke, Joyce E. Dock, | * | |
| Tracie Monroe, Norma Goben, | * | |
| Vickie Hopkins, Jim Stufflebean, | * | |
| Linda Stufflebean, Ted Luebbert, | * | |
| Melodie Cope, Rose Kirby, | * | |
| | * | |
| Interested Parties/ | * | |
| Appellees. | * | |

_____

Submitted: February 18, 2005
Filed: April 29, 2005 (Corrected 5/17/05)
_____

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Apex Oil Company (Apex) appeals from the district court's[1] order affirming the bankruptcy court's[2] denial of Apex's motion to reopen its bankruptcy case pursuant to 11 U.S.C. § 350(b). We affirm.

## I.

In 1967, Clark Oil & Refining Corporation (Clark) purchased a petroleum refinery in Hartford, Illinois. In 1981, Apex acquired Clark by merger and continued to operate the refinery through Clark and another subsidiary (Apex Holding Co.). On December 24, 1987, Apex and most of its subsidiaries (including Apex Holding Co. and Clark) filed for bankruptcy under Chapter 11 of the Bankruptcy Code. As part of that bankruptcy case, Apex sold the refinery to the Premcor Refining Group, Inc. (Premcor), on November 22, 1988. Apex was reorganized and reincorporated during the pendency of the bankruptcy proceedings, and Clark was fully merged into the new corporation.

The bankruptcy court confirmed Apex's reorganization plan on August 16, 1990. In accordance with 11 U.S.C. § 1141(d)(1), the plan discharged Apex, its property, and its bankruptcy estate from any claims, debts, and liens that arose before the confirmation date (as well as debts specified in 11 U.S.C. §§ 502(g), 502(h), and 502(i)) but that were not provided for in the plan. The discharge applied regardless of whether a given creditor filed a proof of claim, whether the debt was allowed under 11 U.S.C. § 502, or whether the creditor accepted the plan. 11 U.S.C. § 1141(d)(1)(A). The discharge also operated as an injunction against the commencement of an action to collect or recover as a personal liability of Apex any

---

[1] The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

[2] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

debt discharged by the plan.  11 U.S.C. § 524(a).  The bankruptcy court subsequently declared the plan final and closed Apex's bankruptcy estate on September 30, 1996.

On July 29, 2003, a group of Hartford, Illinois, homeowners (appellees here) filed a class action complaint against Apex, Premcor, and 50 John Doe defendants in the Circuit Court of Madison County, Illinois.[3]  The complaint alleged that, through their design, operation, and maintenance of the refinery and its accompanying pipelines and storage tanks, Apex, Premcor, and the John Doe defendants have allowed 4 million gallons of gasoline and other petroleum products to form an underground toxic plume beneath Hartford.  The complaint further alleged that the plume has destroyed property values in Hartford and has jeopardized the health of Hartford's residents.  The complaint sought injunctive relief and damages on nuisance, trespass, and strict liability theories.  The complaint also requested the institution of a medical monitoring program for Hartford's residents.

Apex promptly removed the case to the United States District Court for the Southern District of Illinois.[4]  In its answer and affirmative defenses, Apex asserted that the appellees' claims arose prior to the confirmation order and thus were discharged by the 1990 bankruptcy plan. While the case was pending in the Southern District of Illinois, Apex filed a motion to reopen in the bankruptcy court.  In addition, Apex requested that the bankruptcy court enforce the discharge order against the appellees, hold the appellees in contempt for violating the discharge injunction, and direct the appellees to dismiss their claims against Apex.  The

---

[3]The John Doe defendants are allegedly employees, contractors, sub-contractors, and agents of Apex and Premcor.

[4]The case was subsequently remanded to the Madison County court, and is currently pending there.  Three additional suits have since been filed against Apex and Premcor in Madison County.

bankruptcy court denied the motion to reopen and therefore found it unnecessary to reach Apex's other asserted grounds for relief. The district court affirmed.

## II.

As the second reviewing court in a bankruptcy case, we apply the same standard of review as the district court. Valner v. O'Brien (In re O'Brien), 351 F.3d 832, 836 (8th Cir. 2003). Accordingly, we review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. Id.

We review the bankruptcy court's denial of Apex's motion to reopen for abuse of discretion. See Dworsky v. Canal Street Ltd. Partnership (In re Canal Street Ltd. Partnership), 269 B.R. 375, 379 (8th Cir. BAP 2001); Woods v. Kenan (In re Woods), 173 F.3d 770, 778 (10th Cir. 1999); Citizens Bank & Trust Co. v. Case (In re Case), 937 F.2d 1014, 1018 (5th Cir. 1991); Hawkins v. Landmark Fin. Co. (In re Hawkins), 727 F.2d 324, 326-27 (4th Cir. 1984). We may not reverse the bankruptcy court's ruling unless we have a "definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." In re Canal Street, 269 B.R. at 379.

The relevant statute, 11 U.S.C. § 350(b), provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Apex contends that because bankruptcy cases are reopened as a matter of routine, the bankruptcy court erred by refusing to reopen on a ground not previously recognized by case law or statute (i.e., when the relief sought by the debtor is not available,[5] when the debtor acts deceitfully or

---

[5]See, e.g., Beezley v. Cal. Land Title Co. (In re Beezley), 994 F.2d 1433, 1434 (9th Cir. 1993).

-4-

fraudulently,[6] or when there is undue prejudice to creditors due to the delay in bringing a motion to reopen after the grounds for a motion become apparent[7]).

We disagree for two reasons.  First, we decline to adopt Apex's restrictive view of the bankruptcy court's discretion.  The statute is clearly phrased in permissive language and states that bankruptcy courts may, but are not required to, reopen a closed bankruptcy estate in order to—among other things—accord relief to the debtor.  Apex's interpretation would establish a per se rule requiring a bankruptcy court to grant a motion to reopen whenever the previously recognized circumstances that Apex describes are absent.  We reject Apex's argument that unambiguous, precatory language may somehow be interpreted as mandatory.  Instead, we agree with those courts which have held that it is within the bankruptcy court's discretion to base its decision to reopen on the particular circumstances and equities of each particular case.  See In re Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991); In re Case, 937 F.2d at 1018; In re Hawkins, 727 F.3d at 326-27.

Second, we disagree with Apex's assertion that the bankruptcy court relied upon impermissible factors in denying the motion to reopen.  The bankruptcy court stated that its decision not to reopen Apex's bankruptcy case was supported by: (1) the availability of relief in another jurisdiction (at that time, the Southern District of Illinois); (2) the presence of other defendants in the class action litigation not subject to the bankruptcy court's jurisdiction; (3) the passage of time between the class action and the closure of Apex's bankruptcy estate (almost seven years), as well as the fact that all property of the estate had either been distributed to creditors or re-vested in Apex;  and (4) the class action litigation's nonexistent impact on Apex's bankruptcy estate.

---

[6]See, e.g., Stark v. St. Mary's Hosp. (In re Stark), 717 F.2d 322, 324 (7th Cir. 1983) (debtor may reopen where there is no evidence of fraud or intentional design).

[7]See, e.g., In re Quackenbos, 71 B.R. 693, 696 (Bankr. E.D.Pa. 1987).

The availability of relief in an alternative forum is a permissible factor on which to base a decision not to reopen a closed bankruptcy case. Although the bankruptcy court is in the best position to interpret its own orders, see In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 6 F.3d 1184, 1194 (7th Cir. 1993), Congress granted state courts concurrent jurisdiction to consider bankruptcy issues arising from Chapter 11 proceedings. 28 U.S.C. § 1334(b). In addition, although the bankruptcy court in this case may have been more familiar with the prior circumstances of Apex's bankruptcy, it had no familiarity with the appellees or their claims because those claims were not asserted against Apex in the 1990 bankruptcy case. The appellees' claims are already being adjudicated in state court, and the related dischargeability issue could be ruled upon in that forum in light of Apex's assertion of a dischargeability defense in the state court action. Accordingly, the bankruptcy court did not commit a clear error of judgment in finding that the availability of relief in an alternative forum with jurisdiction over all defendants weighed against reopening the case.[8] In addition, Apex has provided no evidence to support its assertion that adjudication in the state court, which is already acquainted with the appellees' underlying claims, would somehow be less efficient than adjudication in the bankruptcy court, which would be facing such claims for the first time.

The bankruptcy court also permissibly relied upon the settled nature of the estate in declining to reopen Apex's bankruptcy case. The act of reopening a closed bankruptcy case is typically ministerial and presents a limited range of issues, including whether further administration of the estate appears to be warranted.[9]

---

[8]Although the alternative forum referred to by the bankruptcy court was a federal district court, the difference between federal and state court adjudication of the issue is not of sufficient significance to cast doubt upon the bankruptcy court's ruling.

[9]We decline, as Apex urges us to do, to view the district court's decision to reopen the case as an abstention from adjudicating the underlying dischargeability issue. The district court here did not abstain from making a decision whether to

Lopez v. Specialty Restaurants Corp. (In re Lopez), 283 B.R. 22, 26 (9th Cir. BAP 2002). Given the bankruptcy court's undisputed findings that the estate had been fully administered and that the outcome of the class action would have no adverse affect on the estate or any of Apex's former creditors, no further administration of the estate appears to be necessary.

Finally, we note that "[t]he longer the time between the closing of the estate and the motion to reopen … the more compelling the reason for reopening the estate should be." In re Case, 937 F.2d at 1018. We find no error in the bankruptcy court's ruling that Apex did not present a compelling reason to reopen its bankruptcy case more than seven years after it was closed.

Apex protests that adjudication in the state court will deprive it of the fresh start to which the 1990 bankruptcy entitles it, and that its right as a debtor to adjudicate the dischargeability issue in bankruptcy court should be respected. We disagree. Apex's fresh start is effected through the enforcement of the 1990 plan and its discharge injunction; the state court is fully competent to determine whether the plan and the injunction apply to the appellees' claims. In addition, as evidenced by its grant of concurrent jurisdiction to state courts, Congress explicitly declined to create a right to adjudication of Chapter 11 issues in bankruptcy court in all instances. In short, we agree with courts that have found that a debtor's desire to adjudicate an issue in bankruptcy court, rather than in an alternative forum, constitutes insufficient grounds on which to reopen a bankruptcy case. E.g., In re Dabbs, 72 B.R. 73, 75 (Bankr. N.D.Ala. 1987); In re Carter, 38 B.R. 636, 638 (Bankr. D.Conn. 1984).

The judgment is affirmed.

_____

reopen Apex's bankruptcy case, but in fact denied the motion. We further note, without deciding, that if the bankruptcy court's decision were characterized as an abstention, we would likely lack jurisdiction to hear Apex's appeal. See 28 U.S.C. § 1334(d).